JOHN H. ROTTMANN, Respondent, v. HENRY POHLMANN, Appellant.

St. Louis Court of Appeals, January 3, 1888.

1. STATUTE OF FRAUDS—PROMISE TO PAY THE DEBT OF ANOTHER.—A direct promise to pay for goods to be sold to a third party is an original undertaking, and need not be in writing. But where it is understood that the account is to be made against the purchaser, and that the seller is to collect the money from him, if possible, before demanding it of the promisor, the promise is collateral, and is not enforceable without a writing.

2. PRACTICE—INSUFFICIENCY OF PROOFS.—Where the plaintiff's own testimony is inconclusive, and that given by all his other witnesses makes a clear case of collateral undertaking, there is not sufficient evidence of a direct promise to be submitted to a jury.

3. ——— VERDICT CONTRARY TO EVIDENCE.—Where all the testimony distinctly proves one side of an issue, and the jury find in favor of the other, the verdict should be set aside.

APPEAL from the St. Louis Circuit Court, HON. SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

GEORGE W. ROYSE, for the appellant: We insist that this contract (assuming that it was made as alleged) makes Pohlmann a mere surety, and that when Rottmann took the notes from Belleville, in January, 1880, and granted him an extension of time in two instances thereon, without the consent of Pohlmann, it worked a release of the security as to this debt. *Allen v. Richard,* 83 Mo. 55; *Springer v. Kleinsorge,* 83 Mo. 152. It is not contended that Pohlmann agreed to this extension of time to Belleville, or that he even knew it, or that he ever knew that Rottmann had taken Belleville's notes, until the first trial in 1883. An agreement for an extension of time between the creditor and the principal debtor discharges the surety, unless he assents to it.

*Ins. Co. v. Carson*, 31 Mo. 218; *Rucker v. Robinson*, 38 Mo. 154; *McCune v. Belt*, 38 Mo. 281; *Savings Ass'n v. Helm*, 57 Mo. 100. Even after judgment, an agreement to stay the execution for a specified time releases the indorser. *Smith v. Rice*, 27 Mo. 505. There is no consideration shown to support the alleged promise on the part of Pohlmann to stand good for Belleville's debt. He received none of the goods, nor was there anything moving from Belleville to him that could be construed into a consideration. *Walther v. Merril*, 6 Mo. App. 370; *Tucker v. Bartle*, 85 Mo. 114, 120; *Glenn v. Lehner*, 54 Mo. 45. If the plaintiff delivered the goods to Belleville on the faith of Pohlmann's promise to be responsible as a surety for Belleville, the promise must be in writing, or it is void. *Bailey v. Trustees*, 14 Mo. 499; *Glenn v. Lehner*, 54 Mo. 45; *Deegin v. Conzelman*, 31 Mo. 424. Or, whenever the undertaking is collateral to the original and continuing debt of another, as that of security or guarantor for another, it is within the statute of frauds. *Brown v. Brown*, 47 Mo. 130; *Bissig v. Britton*, 59 Mo. 204; *Kratz v. Stock*, 42 Mo. 351; *Barker v. Scudder*, 56 Mo. 272; *Music v. Music*, 7 Mo. App. 495; *Cannman v. Brunswick*, 3 Mo. App. 586; *Glenn v. Lehner, supra.* Or there should be a good consideration, and one beneficial to the promisor. *Walther v. Merrill, supra;* Browne on Frauds, 204, 209; *Furbish v. Gardner*, 98 Mass. 296; 2 Clarke (Iowa), 528; 12 Johns. 291; 15 Wend. 182, 343; 21 N. Y. 412; 20 Wend. 201; 21 Ala. 72. This case clearly falls within the provisions of the second clause of section 2513, Revised Statutes of 1879.

Thomas A. Russell, for the respondent: The promise must be distinctly collateral to come within the statute. 3 Parsons on Contracts, 20. "In the absence of evidence showing distinctly that the promise is collateral, it will be treated as original." 2 Story on Contracts, sec. 1437. The defendant promised to be responsible for the papers his nephew got. The court held

this to be an original promise, and not within the statute. *Chase v. Day*, 17 Johns. 113; *Flanders v. Crolius*, 2 Duer, 206; *Post v. Geoghegan*, 5 Daly, 216; *Hartley v. Vassar*, 88 Ill. 561; *Barrett v. McHugh*, 128 Mass. 165. "If the goods were sold on defendant's credit, it was enough to hold him." *McCoffee v. Redcliff*, 3 Robertson, 445. The creditor is not required to rely "exclusively" on defendant's promise. Browne on Statute of Frauds, sec. 197; 3 Parsons, sec. 20. If goods are sold on the sole credit and responsibility of defendant, although delivered to a third party, there is no liability to which that of the defendant can be collateral, and consequently it does not require a memorandum in writing. Browne on Statute of Frauds, sec. 195; *Hanford v. Higgins*, 1 Bennet (N. Y.) 448. "If, however, the credit is given to both jointly, as neither can be said to be surety for the other to the creditor, their engagement need not be in writing." Browne on Frauds, sec. 197, p. 227; *Swift v. Pierce*, 13 Allen (Mass.) 136; *Gibbs v. Blanchard*, 15 Mich. 292. Only when the promise is distinctly collateral, is it within the statute. 3 Parsons on Contracts (6 Ed.) 19 and 20. If a creditor trusted to one of the parties more than the other, but did in fact trust to one together with the other, it is not within the statute. 3 Parsons on Cont. (6 Ed.) 20. And the court must look to the intentions of parties. "It seems to be well settled that whether a contract comes within the provisions of the statute or not, depends wholly on the agreement. If a party agrees to be originally bound, the contract need not be in writing; but if his agreement is collateral to that of the principal contractor, or is that of a guarantee or security for another, the agreement must be in writing." *Glenn v. Lehner*, 54 Mo. 45; affirmed in *Barker v. Scudder*, 56 Mo. 275.

LEWIS, P. J., delivered the opinion of the court.

Plaintiff sues for a balance of $284.74, due on an open account for liquors sold and delivered to John

Belleville, upon the defendant's undertaking and promise to pay for same.    There was a jury trial and a verdict for the plaintiff.

It appears that, prior to December 30, 1878, Belleville had for a length of time been purchasing liquors from the plaintiff on running account, and had become tardy in his payments ; so that the plaintiff refused to credit him any more, without some responsible security for the accruing indebtedness.   The plaintiff's testimony tended to prove that thereupon Belleville and the defendant went together to the plaintiff's place of business, where the defendant "agreed to be responsible to the amount of four hundred dollars," for any goods that the plaintiff might thereafter sell to Belleville.    The plaintiff's bookkeeper thereupon wrote a memorandum of this undertaking at the top of the page containing Belleville's book account and requested defendant to sign it.   The defendant refused to do so, saying that his word was as good as his writing.   At that time Belleville owed the plaintiff about three hundred dollars on old account. Afterwards, he made sundry payments without giving direction as to how they should be credited, and the plaintiff applied them to the old account, so that that account was fully paid up to December 30, 1878, and a small balance was carried to the credit of the indebtedness subsequently accruing.   The plaintiff testified that he gave the credit to the defendant, and that he would not have sold the goods to Belleville, but for the defendant's undertaking to be responsible for the payment. He did not intend, however, to demand payment from the defendant, until he should have found it impossible to get the money from Belleville.   The defendant, testifying in his own behalf, admitted that he went with Belleville to the plaintiff's office, but denied in positive terms that he there undertook or promised anything whatsoever, or that any such conversation ever occurred, as was described by the plaintiff and his witnesses.

The court gave for the plaintiff the following instruction :

"The court instructs the jury that if they believe, from the evidence, that, on or prior to December 30, 1878, plaintiff had refused to sell Belleville goods on credit, and that defendant, Pohlmann, accompanied Belleville to plaintiff's store, on said last mentioned date, and then and there promised to be bound to the extent of four hundred dollars, and for goods thereafter to be purchased of plaintiff by Belleville; and that the goods in question were sold and delivered to Belleville on the faith of said Pohlmann's promise, then they should find for the plaintiff for the amount which they find, from the evidence, to be yet due and unpaid for such goods as were so thereafter purchased and delivered, with interest thereon at six per cent. per annum, from April 17, 1882."

And, of its own motion, the court gave the following:

"If you find, from the evidence, that defendant, Pohlmann, promised plaintiff to pay for the goods furnished to Belleville, in event Belleville himself should not pay for them, and such was the only promise made by defendant to plaintiff on that subject, then, under the statute of frauds of Missouri, you should find for defendant, as such promise could not create a liability on the part of defendant, unless made in writing signed by defendant or his agent; and in the present case, there is no evidence of such written promise."

"The memorandum of December 30, 1878, in regard to defendant (as contained in the accounts or exhibits on file in this cause) has no effect as a written promise by defendant in this cause, and does not create any liability on defendant's part to answer for any debt of Belleville."

"If you find, from the evidence, that Pohlmann made no promise to pay plaintiff for any goods to be delivered to Belleville by the plaintiff, then you should find for the defendant."

"The court declares the law to be that, on the evidence before them, defendant can, in no possible

event, be held liable for any goods furnished by plaintiff to Belleville prior to December 30, 1878, or for any balance of account due at that time by Belleville to plaintiff."

We find nothing in these instructions of which the defendant can justly complain. They carefully discriminate between a primary and direct promise by the defendant, that he would be "responsible"—that is, answerable, liable to pay—for goods sold to Belleville, up to the amount of four hundred dollars, and a mere collateral undertaking to make good a credit which was to be given to Belleville. The instructions given on the motion of the court guard the defendant to the fullest extent against any liability as guarantor or surety on an indebtedness about to be contracted by Belleville, in the event that Belleville should fail to pay. They hold the defendant liable, if at all, only on his own original promise to pay for the goods about to be sold to Belleville. A promise to be "responsible" for goods, or their price, delivered to a third person, has been held in several instances to be the equivalent of a direct and original promise to pay, and so not within the statute of frauds. *Flanders v. Crolius*, 1 Duer, 206; *Chase v. Day*, 17 Johns. 114; *Post v. Geoghegan*, 5 Daly, 216. The test question which is universally applied in cases of this sort, "to whom was the credit given," appears to have been kept fairly in view in the framing of these instructions. It results that the verdict ought not to be disturbed, if there was substantial testimony in support of the hypotheses which formed a basis for the defendant's liability as the instructions define it. On the other hand, if, in the light of the instructions, the verdict is utterly irreconcilable with the testimony, taken as a whole, it should not be permitted to stand.

The distinction upon which the case turns at this point may be expressed in a few words: "If a party agrees to be originally bound, the contract need not be in writing; but if his agreement is collateral to that of

the principal contractor, or is that of a guarantor, or a surety for another, the agreement must be in writing." *Glenn v. Lehnen*, 54 Mo. 45. The defendant's undertaking, as described by the plaintiff in his testimony, may be regarded as having strong characteristics of an original promise. The plaintiff repeated, more than half a dozen times in the course of his examination, that the defendant "agreed to be responsible" to the amount of four hundred dollars, for any liquors that the plaintiff should thereafter sell to Belleville. With these statements there was no qualification or condition as to Belleville's failure to pay, or as to the credit being given to Belleville upon the defendant's guaranty that it should be made good. So far, it may be said that the testimony tended to support the verdict. But other statements made in a different connection by the same witness, and the concurrent effect of all the other testimony in the case, established, beyond question, that the sales were to be made on a credit to Belleville, and that the defendant's only connection therewith was that of a guarantor of the payment. Stress is laid on the fact that the plaintiff refused to give credit any longer to Belleville alone. But this only emphasizes his demand of a guarantor for future purchases.

The plaintiff testified that the defendant said to him : "Now you try to cut Belleville down, and not let *his account* run up above that four hundred dollars." Again, he testifies : "Of course, it was our duty to try first to get the money from Belleville, before looking to Mr. Pohlmann for it. * * * Pohlmann said for us to get the money out of Belleville if we could, so he would not have to pay anything." The plaintiff's bookkeeper testified : "The defendant, Pohlmann, guaranteed that he would pay the account of the defendant, Belleville, if he did not; provided that the account be no higher than four hundred dollars. * * * Belleville was refused credit on this day, December 30, 1878, and Pohlmann was brought in to guarantee the account, which he did." The plaintiff's partner in business tes-

tified : "Mr. Pohlmann said, 'Well, that is all right; I will hold myself responsible for an amount not exceeding four hundred dollars, *for Mr. Belleville.*' * * * Mr. Pohlmann guaranteed to the amount of four hundred dollars. I think that was to include the old account. * * * We did not intend to look to Mr. Pohlmann, if we could make the money out of Mr. Belleville. It was Belleville that was dealing with us, and we had no business to look to Mr. Pohlmann, until we failed to get it from Belleville. * * * I knew that Mr. Pohlmann was good, and when he came in we accepted him as a good man, and then we *continued to credit Belleville* from that time." The memorandum which, under the plaintiff's direction, was written by his bookkeeper at the top of Belleville's account on the books, was in these words : "Payment of this account guaranteed this day by Mrs. Belleville and Mr. Hy. Pohlmann, the latter to be responsible for the amount of four hundred dollars, or less, the former for everything that may be bought." As this paper was not signed by any person, it was of no binding force in itself. But it was introduced in evidence by the plaintiff, and may reasonably serve to show by its phraseology what, at least, was his understanding, at the time, of the character of the undertaking he was endeavoring to procure from the defendant. Referring to it in his testimony, the plaintiff said : "That memorandum states here that, if we could not make it out of Belleville, that Mr. Pohlmann would have to pay for it."

The understanding of the parties at the time of the alleged promise is, by all authority, the true and sufficient test of the character of the undertaking. The persons present at the making of the promise here in question were, the plaintiff, his partner, his bookkeeper, and the defendant. Leaving out the defendant, who denies everything, it is impossible to glance over the testimony of the three other persons, as above quoted, without clearly perceiving what was their common understanding of the matter in hand. This was, that

Belleville was about to purchase goods from the plaintiff on a credit, and that the defendant guaranteed that the plaintiff should get his money, by promising that he would pay it himself, if Belleville did not. Against the accumulated evidences of such an understanding, there is opposed only the statement, repeated without any qualification or condition, by the plaintiff himself, that the defendant "agreed to be responsible" for Belleville's purchases up to the amount of four hundred dollars. While this form of expression may ordinarily be considered as indicative of an original and unconditional undertaking, yet when we find the same witness, in other parts of the same examination, giving unmistakable proofs that he himself understood, at the time of the undertaking, that it was intended to be a guaranty, and not an original promise, it seems a mockery of justice to permit the expression quoted from him to override all the adverse proofs before us, even though this has been done and sanctioned by the verdict of a jury. The more rational proceeding is, to consider all the plaintiff's statements together, and so reach, if possible, a general effect in harmony with the rest of the testimony. We thus find that although the defendant agreed to "be responsible," yet this was to be for Belleville's account, and not his own ; since he cautioned the plaintiff not to let *his* (Belleville's) account "run up above that four hundred dollars." We further find from the plaintiff's testimony that it was understood, on both sides, that the plaintiff was to " try first to get the money from Belleville," so that the defendant " would not have to pay anything." These statements clearly qualify the plaintiff's first account of the defendant's undertaking, and show it to have been that of a guarantor only.

It thus appears that the evidence, fairly considered and understood, was all one way ; and that that way was contrary to the way the jury found. However reluctant we may be, on general principles, to disturb the finding of a jury on a question of fact, yet the duty lies none the less plainly before us, to let no verdict

stand when we find it directly contrary to the necessary effect of the evidence and the instructions. It is in such cases that the law infers a prejudice or bias in the minds of the jury, which has disqualified them for a fair and impartial consideration of the case before them.

The defendant asked for eight instructions, all of which were refused. They were to some extent tinctured throughout with irrelevancies and false conclusions, and contained nothing, to which the defendant was really entitled, that was not sufficiently expressed in the instructions given.

With the concurrence of all the judges, the judgment is reversed and the cause remanded.