R. E. PRICE, Respondent, v. CHICAGO, MILWAUKEE AND ST. PAUL RAILROAD COMPANY, Appellant.

40 189
87 528

**Kansas City Court of Appeals, March 31, 1890.**

1. **Frauds and Perjuries:** ORIGINAL PROMISE: COLLATERAL PROMISE. In order to hold one for the price of goods delivered to another, in the absence of a writing, it is not only necessary to show a promise on his part, but it is requisite to show that the credit was given solely to the party making the promise; and if the party receiving the goods, or for whose benefit the promise was made, be himself liable at all (except it be a joint promise), the case falls within the statute of frauds. The promise in this case *held* under the evidence not original.

2. **Pleading:** RECOVERY. Plaintiff can recover upon no other cause of action than that upon which he declares.

*Appeal from the Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED.

*Pratt, McCrary* and *Terry & Hagerman*, for the appellant.

( 1 )  The collection by plaintiff from Gibbs of a portion of the check discharged defendant from any liability. *Mundorf v. Wickersham*, 63 Pa. St. 87; *Elwell v. Chamberlin*, 31 N. Y. 611; *Davis v. Krum*, 12 Mo. App. 279; *Norton v. Bull*, 43 Mo. 113; *Watson v. Bigelow*, 47 Mo. 413; Wharton on Agency, sec. 72. Our first proposition can be sustained upon the theory that Price could elect either to pursue the fund or hold the railroad, and having received a benefit from the fund is estopped from claiming that the payment to Gibbs was wrongful. 2 Herman on Estoppel & Res Adjudicata, pp. 1172, 1176, 1177, 1186; Bigelow on Estoppel [ 1 Ed.] 511; *Glass Co. v. Baldwin*, 27 Mo. App. 44; *Stoller v. Coates*, 88 Mo. 514. An election operates as an estoppel at law.  Bigelow on Estoppel, 505.  ( 2 ) There was an entire failure of proof as to the cause of action sued upon.  The cause of action sued for is simply on an account for groceries sold to appellant.  The proof shows that no goods were ever sold to appellant, nor did it ever promise to pay for the goods sold to Gibbs, the account of which is sued upon.  The cause of action, if any existed against appellant, was for wrongfully paying to Gibbs money which belonged to respondent, that is, for a conversion.  There is, therefore, an absolute failure of proof under the doctrine of *Carson v. Cummings*, 69 Mo. 325–332, and *Waldhier v. Railroad*, 71 Mo. 514.  *Lumpkin v. Collier*, 69 Mo. 170, and *Scovill v. Glasner*, 79 Mo. 449.  ( 3 ) If a promise binding the appellant personally can be found from plaintiff's testimony, then the transaction is within the statute of frauds. We do not believe that plaintiff's testimony can be construed as making a promise to pay for the goods sold to Gibbs.  Even if it could be so construed, there can be no doubt about the promise being to answer for the

debt of another. The goods were both delivered and charged to Gibbs. Afterwards Gibbs was treated as a debtor and paid part, if not all, of the account due. Upon the authority of *Rottman v. Fix*, 25 Mo. App. 571, and *Cahill v. Bigelow*, 18 Pick. 369. In such a case the test is, was any credit given to the person who obtained the goods, and if so the statute interposes a bar to a recovery. 3 Kent's Com. [ 6 Ed.] 123 ; *Swift v. Pierce*, 13 Allen, 136 ; *Bugbee v. Kendricken*, 130 Mass. 437 ; *Bryken v. Dohlende*, 27 Ala. 577, 581, 582 ; *Walker v. Richards*, 39 N. H. 259, 264, 265 ; 1 Reed on Statute of Frauds, sec. 95, and cases.

*J. E. Lincoln* and *R. W. McClelland*, for the respondent.

( 1 ) The authorized acts of the agent bind the principal. *Baker v. Railroad*, 91 Mo. 152 ; 13 Mo. App. 221 ; 1 Waits' Act. and Def. 77 ; Bishop Cont. 411, sec. 1031. Parol contracts of an agent duly authorized will bind a corporation. R. S. 1889, sec. 2511. And the admission by defendant that Kelly was authorized to make contracts for provisions carries with it the admission that he was duly authorized. ( 2 ) While generally the books are the best evidence of whom the merchant charges, yet they are not conclusive. Abbott's Trial Evidence, p. 302, sec. 15 ; *Foster v. Persch*, 68 N. Y. 400. They may be explained, and any explanation consistent with the intention to give credit only to another may be shown. *Ib.; Champion v. Doly*, 31 Wis. 190 ; *James v. Spaulding*, 4 Gray, 451 ; *Burckhalter v. Farmer*, 5 Kan. 477 ; *Coal Co. v. Edwards*, 4 Hun. 432 ; *Fiske v. Allen*, 40 Sup. Ct. J. S. 76 ; *Lee v. Wheeler*, 11 Gray, 236 ; *Folsom v. Sheffield*, 53 Mo. 171 ; 1 Thompson on Trials, p. 642, sec. 840, and p. 352, secs. 398, 399; 1 Greenl. Ev., sec. 118, p. 164, and note. ( 3 ) This question of whether plaintiff proved his case may be dismissed with the further suggestion that defendant

acknowledged the debt, when it accepted the fruits of the contract made by its authorized agent, on the first bill. Kelley's Treat. [Ed. 1881.] p. 179, sec. 192; 9 Pet. 607; 7 Hill, 128; 6 Pick. 198; 16 Ind. 56. Also when it accepted and paid the second bill to Gibbs, although sent in in plaintiff's name. The declaration of Kelly here to plaintiff, that bill was sent in in plaintiff's name, was proper. *Ingalls v. Averitt*, 34 Mo. App. 371; *McDermott v. Railroad*, 87 Mo. 285. (4) The error of the court below must be substantial. And where the instructions present the issue to the jury in a satisfactory manner, and there was no substantial error in admitting or rejecting testimony, this court will not interfere. *Crowley v. Gossett*, 32 Mo. App. 17.

ELLISON, J.—Plaintiff sued defendant on an account for goods sold and delivered. He recovered below and defendant appealed. It appears that plaintiff was a grocery merchant, and that one Gibbs was a boarding-house keeper, who boarded section hands in the employ of defendant, and that one Kelly was section foreman. It was "admitted by defendant that section foreman Kelly had authority from defendant to make necessary arrangements and contracts with merchants, on defendant's account, for provisions for the men working under said foreman's control on defendant's road." Plaintiff furnished goods to Gibbs and received one payment through a check from defendant sent to plaintiff, and which included the amount of both plaintiff's and Gibbs' account up to the date of payment, both the accounts having been made out and sent to defendant in plaintiff's name. This action seeks to charge defendant on an original promise to pay for the goods. The statements of the agreement containing the promise as testified to by plaintiff are the following:

R. E. Price: "I am plaintiff. I was in business at Mosby at the time this account was made. Defendant at that time had a section foreman named Tom

Kelly. One Gibbs had charge of a boarding house, and came in to buy goods on credit. I told him I had had trouble enough with other men, and, unless he would get Kelly and bring him in and agree to have the bills made out in my name, I could not let him have anything. I told Gibbs that he could not get any goods unless he made out his boarding-house account in my name and sent it in that way. He was to make out his bill in my name and send it to the company, and I was to take out what Gibbs owed me and pay the balance to Gibbs. When the arrangement was entered into, Gibbs called in my store about the time he bought out Booth, and I said I would not let him have anything before he made the kind of arrangement I referred to. That was before he bought any goods. That arrangement was that Gibbs' boarding-house account should be made out in my name and sent in to the company, and that the check should be made payable to me, and out of that I would pay my grocery account and then pay the balance to Gibbs. There was nothing in writing about it. This was the arrangement made between me, the section foreman and Gibbs." "The arrangement between me, Kelly and Gibbs was this : I refused to sell Gibbs goods, because I didn't think him responsible, and I wanted security ; I was not going to sell to Gibbs alone. The arrangement was that my grocery bills were to be made out, then Gibbs' boarding-house account was to be made out in my name and sent to the company, and the check for it returned to me ; then I would pay my grocery account out of the check and give the balance to Gibbs. The first month that was done, I took my pay and paid the balance to Gibbs."

Neither of these statements show a promise by defendant to pay for the goods furnished Gibbs. The agreement was that plaintiff and Gibbs' accounts were to be made out in plaintiff's name and sent in to

defendant, and that then defendant would send a check for the amount to plaintiff that he might take out the amount of his account and turn over the balance to Gibbs. The evident meaning and understanding of the arrangement was, not that defendant was making an original promise to pay for goods in whatever amount Gibbs might purchase; but merely a promise to put plaintiff in a position where he could with certainty collect or secure his debt against *Gibbs*. In other words, defendant was giving to plaintiff the *security* that he, himself, states he wanted. It is true that plaintiff, in the course of his testimony, says that he "looked to the company for the pay," and that he "refused to let Gibbs buy goods on his own credit." Yet this does not vary the effect or scope of the defendant's explicit agreement to so place the money that it would secure plaintiff's claim against Gibbs. If defendant has violated its agreement, it does not follow that it can be held in an action on an original promise to pay for the goods.

In order to hold one for the price of goods delivered to another, in the absence of a writing, it is not only necessary to show a promise on his part, but it is requisite to show that the credit was given *solely* to the party making the promise. The relation of suretyship should not exist. And if the party receiving the goods, or for whose benefit the promise is made be himself liable at all (except it be a joint promise) the case falls within the statute of frauds. In other words, the person for whose benefit the promise is made must not be credited, and must not be regarded by the plaintiff as a *debtor*. His position must be such that he could not be held liable were an action brought against him for the debt. Browne Stat. Frauds, 197; *Swift v. Pierce*, 13 Allen, 136; *Bugbee v. Kendricken*, 130 Mass. 437; *Walker v. Richards*, 39 N. H. 259; *Rottman v. Fix*, 25 Mo. App. 571.

Applying this statement of the law to the facts in evidence as stated by plaintiff, we find that plaintiff

certainly regarded Gibbs as his debtor. He sought him out, not without some difficulty; he called on the sheriff for assistance; he tried to get Gibbs to pay him and finally did collect ninety dollars of him which he applied on the account, stating that he would hold the defendant for the balance. In addition to this, the account he first opened on his books was against Gibbs, though he afterwards wrote defendant's name above that of Gibbs. While we will not say that this action on plaintiff's part is conclusive that he extended a part of the credit to Gibbs and that he looked upon him as liable for the account, it is at least very persuasive evidence that such was the case and that he did not look upon defendant's agreement as an original promise to pay for the goods. We are satisfied that plaintiff has no case upon the cause of action sued on, and it is well understood he can recover upon no other than that upon which he declares. *Sumner v. Rogers,* 90 Mo. 324; *Carson v. Cummings,* 69 Mo. 325.

We will, therefore, reverse the judgment. The other judges concur.