N. C. FRISSELL, Appellant v. J. J. WILLIAMS et al., Respondents.

### St. Louis Court of Appeals, March 4, 1901.

1. **Contract: AGREEMENT IN WRITING: STATUTE OF FRAUDS: LEVEE DISTRICT.** In the case at bar, the contract was for services to be rendered for the levee district, and was made with the defendants in their official capacity; and there was no individual or personal liability incurred by the defendant, unless when the contract was made for the services of plaintiff and his assistants, there was then and there made to plaintiff an original promise by the defendant that he was to look to them solely for his payment.

2. ———: ———: ———. And if such was the contract and agreement, the defendants are bound, notwithstanding the agreement was not in writing.

3. ———: ———: ———: EVIDENCE. And to establish the agreement, the evidence should show that the defendants agreed to be individually liable, and that on the faith of this agreement the plaintiff accepted the employment and looked alone to the defendant for his pay.

4. ———: ———: ———. In the case at bar, the agreement falls far short of an original promise by the members of the board to become individually liable to plaintiff for his services.

Frissell v. Williams.

Appeal from Bollinger Circuit Court.—*Hon. James D. Fox,*
Judge.

AFFIRMED.

*J. W. Limbaugh* for appellant.

Plaintiff bases his right to recover on an original verbal
promise of defendants. There is no pretense nor claim that
they promised in writing; so that feature, introduced by defend-
ants, is eliminated from the case. The evidence of both plain-
tiff and defendants shows a promise by defendants in their
individual capacity, and that plaintiff looked alone to the in-
dividuals. When the promise is original no writing is nec-
essary, the case is not within the statute (of frauds) and de-
fendants are liable. Browne on Statute of Frauds (5 Ed.),
sec. 195; K. C. Sewer Pipe Co. v. Smith, 36 Mo. App. 608;
Osborn v. Emory, 51 Mo. App. 408; Barker v. Scudder, 56
Mo. 272; Sinclair v. Bradley, 52 Mo. 180. And a corpora-
tion is included in the meaning of the words "another person,"
as used in the statute of frauds. Throop on the Validity of
Verbal Agreements, sec. 360.

*Charles B. Faris* for respondents.

Appellant, as is shown by his own admissions and the ad-
mission of his counsel on the trial below, never charged the
account for his services against the respondents as individuals,
but he uniformly charged his accounts against the levee dis-
trict as such, and rendered these accounts so charged to the
treasurer of the district. Outside of the statute of frauds,
which he does not and can not urge, appellant must show that
he gave credit to the individuals and not to the levee district
in order to permit of his recovering. Gill v. Reed, 55 Mo. App.

246; Price v. Chicago Railroad, 40 Mo. App. 189; Rottman v. Pohlman, 28 Mo. App. 399; Rottman v. Fix, 25 Mo. App. 571; Bissig v. Britton, 59 Mo. 204.

BLAND, P. J.—The material allegations of the petition are as follows:

"That defendants, on August — 1895, and at the date of the institution of this suit, were duly appointed, qualified and acting directors of the St. Francis Levee District of Missouri, which directors are a body politic and corporate, under the name and style of "The Board of Directors of the St. Francis Levee District of Missouri," and which said body corporate and levee district was created under and by virtue of an act of the General Assembly of the State of Missouri, found at pages 200 to 209 inclusive of the laws of Missouri, passed at the session of the thirty-seventh General Assembly of the State of Missouri, A. D. 1893, and approved March 21, 1893.

"That on the ————— day of August, 1895, The Board of Directors of the St. Francis Levee District of Missouri, aforesaid, did make and enter into a contract with plaintiff, by virtue of which it was contracted and agreed by and between said board and plaintiff as follows:

"That said board employed plaintiff as engineer of and for said board, at a salary of one hundred and fifty dollars per month, to make and report to said board surveys and estimates of work to be done in building and maintaining levees in the counties of New Madrid and Pemiscot, in the State of Missouri, for and on behalf of said body corporate.

"That said board at the same time directed, authorized and empowered plaintiff to employ and pay an assistant engineer at the rate of eighty dollars per month, and two rodmen at the rate of forty dollars per month each, to assist him in making said surveys and estimates.

"That said board contracted and agreed that plaintiff should be allowed the necessary expenses of himself, his assistant and rodmen, while engaged in doing said work, all of which salaries and expenses were to be due and payable at the end of each and every month during the continuance of said employment.

"That at the time of the making of the said contract between said board and plaintiff, these defendants agreed and contracted with plaintiff to be and become, originally, severally and jointly, bound and responsible to plaintiff for the payment to him of said salaries of himself, his assistant and rodmen at the end of each and every month during the continuance of said contract, and that plaintiff accepted said employment on the condition and with the understanding and agreement that these defendants were to pay said salaries and expenses, as above set forth."

These allegations are followed by averments, that plaintiff and his assistant and rodmen performed services under the contract from August 12, 1895, to April 1, 1896; that the total amount of salaries earned by them during this period was $2,154.41; an acknowledgment of the receipt of $1,526.72 from defendants, leaving a balance of $627.79 due. An allegation, that while performing the services, plaintiff paid out for necessary expenses the sum of $150.30, and that defendants were liable to him therefor. The petition prayed judgment for $778.09. With the petition was filed an itemized account of his and the services of his assistant and rodmen, and of his expenses.

The answer is as follows:

"Come now the defendants, by their attorney, and for their answer to the amended petition of the plaintiff herein, state, that the supposed promise and contract, creating the alleged debt mentioned and set forth in the petition of the plaintiff, was a

special-promise to answer for the debt of another party, to-wit, the 'St. Francis Levee District of Missouri,' a body corporate, being the same mentioned in the petition of the plaintiff, and that the same was not in writing, nor was any note or memorandum of said contract, or promise, made in writing, or subscribed by the defendants, or by any person by them thereto authorized, and defendants pray judgment that they may go hence without day, and for their costs in this suit expended.

"And defendants for their other and further answer to the amended petition of the plaintiff herein, deny each and every allegation thereof and ask to be hence dismissed with their costs.

"And defendants for their other and further answer to the amended petition of the plaintiff herein, state, that on or about the fifth day of August, 1895, the said 'St. Francis Levee District of Missouri,' hereinafter called the 'levee district,' of which the defendants were then directors, entered into a contract with the plaintiff to do and perform the work mentioned in his petition; that plaintiff at the time of entering into said contract with the levee district, well knew the nature, extent and amount of work to be performed by him and required of him from said levee district; that on the day above mentioned, at the time of entering into said contract with the levee district, plaintiff, at the request of the levee district, made an estimate for said levee district of the time plaintiff would require to finish and complete said work in the event of his employment, and of the amount of money that would be required to pay the salaries of plaintiff and of plaintiff's assistants, while engaged in doing said work for said levee district; that the estimate thus made and submitted to the levee district by the plaintiff fixed the time within which the plaintiff could, if employed by the levee district, finish and complete said work, at the first day of January, 1896, and plaintiff in his said estimate stated to the levee dis-

trict that the sum of $1,500 would be sufficient to pay the salaries of plaintiff and for his assistants and all legitimate expenses thereof up to the above date and until the completion of the work by the plaintiff; that at the time of presenting to the said levee district his estimate of the time and the amount of money that would be required to finish said work on the part of the plaintiff, plaintiff well knowing that said levee district had no money in its treasury, and well knowing that the district had already outstanding a floating indebtedness of more than $130,000, represented to the levee district that his estimate of time and money required to do said work had been placed on a basis of payment in cash, and that unless he were so paid he would be unable to do the said work within the time he stated, if at all; that thereupon, the defendants, as directors of the said levee district, verbally agreed with plaintiff that the levee district would borrow the sum of $1,500, the amount estimated by the plaintiff as sufficient to pay all salaries of the plaintiff and plaintiff's assistants while he was engaged in doing the work mentioned by him in his petition; that thereupon, the plaintiff, without any other or further contract or understanding between him and the defendants, began the work mentioned by the plaintiff in his petition; that the levee district borrowed from the People's Bank, of New Madrid, Missouri, and from Alphonse DeLisle, who is one of the defendants herein, the sum estimated by plaintiff as sufficient to pay him and his said assistants for said work and for all work done by them up to the said first day of January, 1896, and that the defendants, Schult, Cunningham, Girvin, Williams and Brashear, became sureties for said levee district to said People's Bank for the repayment of said money to it; that the said levee district paid plaintiff monthly, in cash, for all work done by him and his assistants up to the said first day of January; that the total amount thus paid to plaintiff by said levee district was $1,526.02; that the

plaintiff did not finish and complete said work by the first of January, 1896, the date agreed on between the plaintiff and the levee district; that it was the error and fault of the plaintiff and not that of the levee district, nor of these defendants, that all of said work was not finished by said date. Defendants further state that on or about the twenty-seventh day of March, 1896, the plaintiff completed the work mentioned by him in his petition, and thereupon he made out his account against the levee district for all work done by him after the said first day of January, and up to the twenty-seventh day of March, 1896, and presented said account to the levee district at a regular meeting thereof; that at the same time plaintiff presented an account for expenses to said levee district, amounting to the sum of $150.30; that the account of plaintiff for work done by him between January 1 and March 27, 1896, as presented to the levee district, amounted to the sum of $628.39; that the account of the plaintiff for services rendered between the dates last mentioned was allowed in the sum of $628.39, and the secretary was ordered by the levee district to draw a warrant in favor of the plaintiff for said sum; that the levee district then and there refused to allow the expense account of the plaintiff and rejected the same; that the plaintiff, well knowing the premises, refused to take the warrant of the levee district for said sum of $628.39, and still continues to refuse to take and accept the same in payment for the work done by him between the first day of January and the twenty-seventh day of March, 1896.

"That the defendants had and made with the plaintiff no other or different agreement than that set forth, wherefore, defendants again pray, having fully answered, that they be dismissed hence with their costs."

To which plaintiff replied as follows:

"That the promise of defendants to plaintiff was and is an original and individual promise made by them to him to pay the wages and expenses, as is particularly set forth in the petition.

That there was no promise made by said board to pay said wages and expenses, but said promise was made solely by said defendants to pay the said wages and expenses; and that this plaintiff accepted said employment solely on the promise of defendants to pay said wages and expenses, and he had always looked to them, and not to said board, for the payment thereof. That said defendants have paid on said account the sum of $1,526.72, leaving due thereon the said sum of $778.09, as is particularly set forth in the petition, for which, with interest thereon, plaintiff prays judgment, as he has formerly prayed in his petition."

At the close of all the evidence, the court gave an instruction in the nature of a demurrer to the evidence. Verdict and judgment for defendants. Plaintiff appealed.

The pleadings raise only three issues of fact: first, whether there was an original agreement between plaintiff and defendants, whereby defendants undertook and agreed to be individually bound to pay plaintiff and his assistants their salaries for services to be rendered under the contract of employment; second, if there was such an undertaking, did it terminate on January 1, 1896—if so, was it renewed and continued in force after that date; third, if defendants were individually liable to plaintiff on account of salaries, were they also liable for his expense account?

In respect to the first issue of fact, the plaintiff, on his examination in chief, testified as follows: "I attended a meeting of the levee board; they were wanting an engineer and I made application for the position through some of the members, and when the board was in session I was there and the matter was discussed.' The question came up as to how the work was to be paid for, whether in scrip or cash; I did not feel that I could take the scrip because it was selling at a great discount. Some member of the board—Dr. Williams I believe—stated that they did not have any money, and I refused to work. Dur-

ing the afternoon there was a discussion as to how to raise the money. I was in and out of. the room a great deal of the time. Later in the day, or about the time the board adjourned, I was called in and Dr. Williams told me that they had agreed to borrow the money and pay me; he says: 'We have agreed to borrow the money and pay you at the end of every month.' The members of the board then were Dr. Williams, Mr. Schult, Mr. DeLisle, Mr. Brashear, Mr. Girvin and Mr. Cunningham, the same parties who are defendants in this suit." Alphonse De-Lisle, one of the defendants in regard to this matter testified as follows: "The board met on August 16 and while in session Mr. Frissell came in and asked to be employed as assistant engineer, and the question came up about the amount of his salary. He stated what he wanted for himself, his assistant and rodman. We agreed on the price. Then the question came up as to the money. He could not work for scrip and he would have to have cash, or rather said his assistants would rather have the cash, as far as his, he was not in a particular rush for his money. The next question was how to get it. We told him we had none, the board had none, and it was out a good deal of money, and didn't know just how to get it. It was discussed that evening, and possibly part of the next day, and after so long they came to the conclusion to try to borrow the money. Mr. Frissell and Captain Phaar were called in, and before we agreed to borrow it or put it up, we wanted to know how much we would have to get up. There was a statement there made, by whom I don't know, but Mr. Frissell was there present, it would be between $1,200 and $1,500. Some member of the board, possibly Dr. J. J. Williams, stated we would have to make a note and each member sign it. I objected to signing it, but it was agreed on by the other members. I objected and said I wouldn't sign a note, and said I wouldn't sign anything, and in justice to myself I wouldn't sign the note, but if the other five members would

get up their $250 apiece, I would put up the cash just as soon as they put it in the bank to the credit of the treasurer of the district, that I would pay my part. They agreed to do that. I told Mr. Frissell, he was there in the room at the time, if the other five members succeeded in getting the money on their note, I would put up my pro rata part, one-sixth of the whole. The thing went on for some while, and they suggested borrowing $1,000, and put up my $200; after that I was notified we would have to get up the balance, the other directors were to make a note for $350 and I was to put up $70 more, and so sent my check, and the cashier of the bank put it to the credit of the levee board." The testimony of the other defendants is in line with that of DeLisle. Bearing on this issue is the further fact, that the plaintiff made out all of his monthly payrolls against the levee district and received his pay by checks signed by its treasurer as such, and after the completion of the work, made out his final account and delivered it to the secretary of the board of directors to be allowed by it. It was also shown that the money borrowed and paid in by the defendants was borrowed for the district and deposited to the credit of its treasurer. By the act creating the St. Francis Levee District (Sec. 3, p. 200, Acts 1893), the board of directors of said district are declared to be a body politic and corporate, and are clothed with all the powers necessary to carry into effect the purposes of the Act, to-wit, to build and repair levees in the district to prevent overflow from the Mississippi river and by taxation to provide means for these purposes. A district incorporated for a like purpose was, in the case of Morrison v. Morey, 146 Mo. 543, held to be a political subdivision of the State with authority to exercise the prescribed functions of government within the district. The authority of the board of directors to hire the plaintiff for the purpose for which they did hire him and to bind the district to pay him the agreed salaries, is, therefore, put at rest and is not

questioned by the plaintiff.

The contract was for services to be rendered for the levee district, and was made with the defendants in their official capacity; there was, therefore, no individual or personal liability incurred by the defendants unless when the contract was made for the services of plaintiff and his assistants, there was then and there made to plaintiff an original promise by the defendants that he was to look to them solely for payment. If such was the contract and agreement, the defendants are bound, notwithstanding the agreement was not in writing. Glenn v. Lehnen, 54 Mo. 45; Baker v. Scudder, 56 Mo. 272; Gill v. Reed, 55 Mo. App. 246; Sinclair v. Bradley, 52 Mo. 180; Osborn v. Emery, 51 Mo. App. 408. To establish the agreement, the evidence should show that the defendants agreed to be individually liable and that on the faith of this agreement the plaintiff accepted the employment and looked alone to the defendants for his pay. Gill v. Reed, 55 Mo. App. 246; Prin v. Railroad, 40 Mo. App. 189; Rattmond v. Sholman, 28 Mo. App. 399; Rattmond v. Britton, 59 Mo. 204. To make out the promise, plaintiff relies upon the following statement he says was made by Dr. Williams, the president of the board when the contract was made, while the board was in session, to-wit. "We have agreed to borrow the money and pay you at the end of every month." This statement, in view of the circumstances under which it was made could have meant nothing more than that the board would borrow the money for the district, and out of the money so borrowed would see that plaintiff and his assistants were paid at the end of every month. That the plaintiff so understood it, admits of no reasonable doubt, from his conduct on the occasion of his employment and from his subsequent actions in making out his monthly payrolls against the district and presenting them to the district treasurer for payment and receiving from him checks

signed by him officially and by presenting his final accounts, on completion of the work, to the board of directors for allowance, and by the further fact that he at no time presented any of his accounts to any of the defendants as individuals and demanded payment. There is not substantial conflict between the evidence of the plaintiff and any of the defendants in respect to what transpired in regard to providing money for the payment of the salaries of plaintiff and his assistants. It is all one way and to the effect that the district was without means to pay the salaries and without the means of raising it; that to secure the money, the directors agreed to pledge their individual credit and borrow the money for the district. This they did and the money was placed to the credit of the district and was paid out by the district to the plaintiff through checks drawn in his favor by the district treasurer. This agreement, this transaction, falls far short of an original promise by the members of the board to become individually liable to the plaintiff for his services. The promise was not to become individually liable to the plaintiff, but to use their individual credit to raise means for the district, whereby the plaintiff might be paid by the district, not by the members of the board as individuals. There was no substantial evidence to go to the jury, tending to establish the fact of an original promise, and as this lies at the very foundation of plaintiff's cause of action, the court correctly took the case from the jury by the instruction given.

As this view of the evidence cuts up plaintiff's case by the roots, it is unnecessary to discuss the other points in the plaintiff's brief. The judgment is affirmed. All concur.